UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY ANCHOR, ET AL.,

                Plaintiffs,

v.                                       **DECISION AND ORDER**
                                               05-CV-7S

NOVARTIS GRIMSBY LTD.,
NOVARTIS INT'L PHARMACEUTICALS LTD.
and NOVARTIS PHARMA AG,

                Defendants.

## I. INTRODUCTION

Plaintiffs in this action are from Holley, N.Y., where, on January 5, 2002, an explosion at the Diaz Chemical Corporation ("Diaz") facility resulted in the release of toxic chemicals into the air. Defendants Novartis Grimsby Ltd ("Grimsby"), Novartis Int'l Pharmaceuticals Ltd. ("NIP") and Novartis Pharma AG ("Pharma") are foreign corporations that are allegedly liable for the environmental contamination caused by the explosion. Plaintiffs seek redress for personal injury, property damage and response costs pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601 et seq. ("CERCLA"), as well as various state common law and equitable theories, including negligence, private and public nuisance, and strict liability. (Amended Complaint, ¶ 6.)

Presently before this Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). For the reasons set forth below, this Court finds that Plaintiffs

1

have failed to establish that this Court has personal jurisdiction over the foreign defendants in this action. Defendants' Motion to Dismiss on jurisdictional grounds will therefore be granted.

## II. BACKGROUND

**A.     Standard of Review**:  **Rule 12(b)(2)**

When challenged with a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). If the court relies on pleadings and affidavits, rather than a full evidentiary hearing, to resolve the motion, the plaintiff need make only a *prima facie* showing of personal jurisdiction to carry its burden. See Distefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (citing Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)); Langenberg v. Sofair, No. 03 CV 8339, 2006 WL 2628348, at *2 (S.D.N.Y. Sep. 11, 2006).

In determining whether the plaintiff has made this showing, the court is not obligated to draw "argumentative inferences" in the plaintiff's favor. Robinson, 21 F.3d at 507 (citing Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)). However, the pleadings and affidavits, and all doubts arising therefrom, are construed in the light most favorable to the plaintiff. See CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). The facts below are drawn from the Amended Complaint and the declarations filed in support of Defendants' Rule 12(b)(2) motion. See Langenberg, 2006 WL 2628348, at *5 ("courts are authorized to rely on affidavits submitted by the parties in

deciding a Rule 12(b)(2) motion to dismiss").

**B.    Facts**

    **1.    Parties**

There are approximately 144 plaintiffs in this action. Many of the plaintiffs have brought suit individually and as parents or guardians of minor children. All of the plaintiffs are current or former residents of Holley, N.Y., or are real property owners who have been negatively impacted by the January 5, 2002 explosion at the Diaz facility. (Amended Complaint, ¶ 2.)

Each of the three defendants is a foreign entity: Grimsby is a British corporation; NIP is an Irish corporation; Pharma is a Swiss corporation. (Amended Complaint, ¶¶ 9-11.) None of the defendants are incorporated in New York or licensed, registered or authorized to do business in New York. (Bantle Decl., ¶¶ 3-4; O'Gara Decl., ¶¶ 3, 4; Clarkson Decl., ¶¶ 3, 4.) None of the defendants, have offices, agents or bank accounts in New York, nor do they have officers or employees located in New York. (Bantle Decl., ¶ 5; O'Gara Decl., ¶ 5; Clarkson Decl., ¶ 5.)

    **2.    The Explosion at the Diaz Facility**

The Diaz facility manufactured specialty chemicals for use in agricultural and pharmaceutical industries. (Amended Complaint, ¶ 104.) On January 5, 2002, at approximately 10:45 p.m., an explosion occurred during the manufacturing of 2-chloro-6 fluorophenol ("CFP"). (Amended Complaint, ¶ 125.) Hot chemicals in a chemical process tank exploded through a rupture disk, resulting in the release into the atmosphere of various hazardous liquid and vapor substances, including CFP, 2,4-dichloro-6 fluorophenol, and toluene. (Amended Complaint, ¶ 125.) Fumes and odors from the explosion

permeated the Village of Holley and other areas as far as 12 miles away. (Amended Complaint, ¶ 127.) Corrosive chemicals coated vehicles, houses and other surfaces. (Amended Complaint, ¶ 126.) Many of the plaintiffs called 911 to report the explosion and odor, as well as burning in their eyes. (Amended Complaint, ¶ 128.) Many of the plaintiffs were forced from their homes. (Amended Complaint, ¶ 130.)

The toxic chemicals released during the explosion dissipated very slowly. (Amended Complaint, ¶ 131.) The chemicals were eventually absorbed by materials in the Village of Holley and on Plaintiffs' properties, including trees, plants, siding, roofs, furniture, clothes, draperies and bedding. (Amended Complaint, ¶ 131.) Moreover, Plaintiffs have inhaled, ingested and absorbed the toxic chemicals into their bodies, and have suffered severe headaches, nausea, vomiting, constriction of the throat and chest, difficulty breathing, bloody nasal discharges, skin burns and irritation, kidney pain and other physical ailments. (Amended Complaint, ¶ 135.)

Plaintiffs allege that the Diaz facility lacked adequate safety and environmental controls for the chemical processes it conducted, particularly for the production of CFP. (Amended Complaint, ¶ 108.) For example, they assert that the facility's rupture disks were improperly designed to release process chemicals into the ambient air when pressure built up inside a process tank or system. (Amended Complaint, ¶¶ 108-109.)

### 3. Defendants' Relationship with Diaz

In their Amended Complaint, Plaintiffs allege that in 2000, Diaz began participating in a "program" established by Defendants to produce CFP for use in a new pharmaceutical drug. (Amended Complaint, ¶ 111.) Defendants allegedly provided Diaz confidential technical specifications and other information concerning CFP so that Diaz could develop

a production process for the chemical. (Amended Complaint, ¶ 112.) Plaintiffs allege that Defendants knew that the manufacturing of CFP was dangerous and Defendants even warned Diaz that the chemical was corrosive and that its release into the environment should be avoided. (Amended Complaint, ¶ 113.)

Nonetheless, Diaz began efforts to produce CFP, allegedly at Defendants' direction and using the technical specifications and other information provided by Defendants. (Amended Complaint, ¶ 114.) Plaintiffs contend that Diaz relied on Defendants to provide day-to-day advice on the manufacture of CFP. (Amended Complaint, ¶ 119.) Plaintiffs further allege that just prior to the explosion, Diaz notified Defendants that it was having difficulty producing CFP, and it invited Defendants to the Diaz facility. (Amended Complaint, ¶ 120.) Defendants did not act on this invitation.

According to the affidavits submitted in support of the present motion, Defendants' relationship with Diaz began in May of 1999, when Pharma was seeking suppliers of CFP for use in the manufacture of coxacamide, which is the active ingredient in a pharmaceutical product that Pharma was preparing to launch. (Bantle Decl., ¶ 7.) Pharma was successful in identifying three potential suppliers, one each from the United States, China and the United Kingdom. (Bantle Decl., ¶ 7.) Each of the potential suppliers manufactured CFP differently and according to their own specific methods. (Bantle Decl., ¶ 7.) Pharma entered into confidentiality agreements with each of these potential suppliers. (Bantle Decl., ¶¶ 7, 9.)

Diaz, which is not a defendant in this action, was the potential supplier located in the United States. (Bantle Decl., ¶ 7.) Between January of 2000 and May of 2002, representatives from Defendants and Diaz discussed whether Diaz could be a suitable

supplier of CFP for Pharma.  (Bantle Decl., ¶¶ 8, 10; O'Gara Decl., ¶ 10; Stephenson Decl., ¶ 4.)  Defendants' representatives remained outside of the United States during these discussions, communicating with Diaz's representatives via telephone, fax and email.  (Bantle Decl., ¶ 8; O'Gara Decl., ¶ 10; Stephenson Decl., ¶ 6.)

After the explosion, Defendants were informed that there had been a release at the Diaz facility during Diaz's attempt to manufacture CFP, and that Diaz would not be a CFP supplier.  (Bantle Decl., ¶ 12; O'Gara Decl., ¶ 11.)  Thus, Defendants never purchased or entered into any agreement to purchase CFP from Diaz.  (Bantle Decl., ¶ 13; O'Gara Decl., ¶ 11.)  Defendants eventually acquired CFP from the suppliers in China and the United Kingdom.  (Bantle Decl., ¶ 13; O'Gara Decl., ¶ 15.)

Defendants maintain that none of their employees ever visited or worked at the Diaz facility.  (Bantle Decl., ¶¶ 8, 11; O'Gara Decl., ¶ 12; Clarkson Decl., ¶ 10; Stephenson Decl., ¶ 7.) Moreover, they assert that they did not have any ownership interest in the Diaz facility, nor did they ever manage or operate the facility.  (Bantle Decl., ¶¶ 14, 15; O'Gara Decl., ¶¶ 13, 14; Clarkson Decl., ¶¶ 8, 9.) They further deny ever dictating how Diaz should comply with environmental regulations or implement safety procedures.  (Bantle Decl., ¶ 15; O'Gara Decl., ¶ 14; Clarkson Decl., ¶ 9.)

**C.    Procedural History**

This is the third federal action Plaintiffs have filed relative to the Diaz facility explosion.  On May 15, 2002, approximately four months after the explosion, Plaintiffs sued Diaz in this Court.  See Jeffrey Anchor, et al. v. Diaz Chem. Corp., No. 02-CV-357S.  That case was stayed on June 24, 2003, due to Diaz's filing of a bankruptcy petition.  (Amended Complaint, ¶ 7.)

Plaintiffs then brought a second action in this Court on April 15, 2004, against Diaz Intermediates Corporation and other defendants. See Jeffrey Anchor, et al. v. Diaz Intermediates Corp., et al., No. 04-CV-300S. That action remains pending.

Plaintiffs commenced the instant lawsuit on January 4, 2005, by filing a Complaint in the United States District Court for the Western District of New York. Plaintiffs filed an Amended Complaint on November 1, 2005. Defendants filed their Motion to Dismiss on May 19, 2006. After full briefing, this Court heard oral argument on the motion on November 17, 2006, and reserved decision at that time.

### III. DISCUSSION

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits – subject of course, to certain constitutional limits of due process." Robinson, 21 F.3d at 510 (internal citations omitted). This is true in diversity cases and in federal question cases where the federal statute at issue does not provide for nationwide service of process. See Omni Capital In't v. Rudolph Wolff & Co., 484 U.S. 97, 104-05, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); Pro-Fac Coop., Inc. v. Alpha Nursery, Inc., 205 F.Supp.2d 90, 96 (W.D.N.Y. 2002). In this case, Plaintiff has invoked both this Court's diversity and federal question jurisdiction. (Amended Complaint, ¶¶ 146, 147.) Because CERCLA does not provide for nationwide service of process in private suits, this Court applies New York's jurisdictional statute, subject to the constraints of constitutional due process. See Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 589 (9th Cir. 1996) (finding that CERCLA § 9613 authorizes nationwide service of process only in actions brought by the United States, not private actions); City of Bangor v. Citizens Commc'ns Co., No. Civ. 02-183, 2003 WL 22019525, at *1 (D.Me. Nov. 22,

2003) ("Congress did not provide, however, for private nationwide service of process except in CERCLA cases commenced by the United States.") (citing Am. Tel. & Tel., 94 F.3d at 589); Steego Corp. v. Ravenal, 830 F.Supp. 42, 50 (D. Mass. 1993) (accord).

To determine whether personal jurisdiction over a defendant exists, the court engages in a two-part analysis. Bank Brussels, 171 F.3d at 784. First, it must determine whether there is jurisdiction over the defendant under the relevant forum state's laws. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). If such personal jurisdiction exists, the court must then determine whether the exercise of jurisdiction complies with federal due process requirements. Id.

### A.   New York's Long-Arm Statute

"Courts may assert two broad categories of jurisdiction over an individual action: specific jurisdiction, which arises when the defendant's activities in the forum are the subject of the action, and general jurisdiction, which arises out of a defendant's contacts with the forum even though those contacts themselves are unrelated to the action before the court." Langenberg, 2006 WL 2628348, at *2 (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002) and Commc'ns Partners Worldwide, Inc. v. Main St. Res., No. 04 Civ. 10003, 2005 WL 1765712, at *2-*3 (S.D.N.Y. July 26, 2005)).

New York law provides for both general and specific jurisdiction. The general jurisdiction of New York courts is codified at N.Y. C.P.L.R. § 301. See Langenberg, 2006 WL 2628348, at *2. Section 302 of the N.Y. C.P.L.R. is New York's long-arm statute, and it sets forth the requirements for the exercise of specific jurisdiction. See id. Here, Plaintiffs argue that this Court has personal jurisdiction over Defendants pursuant to the

long-arm statute. They do not argue that general jurisdiction exists under N.Y. C.P.L.R. § 301.

New York's long-arm statute authorizes the exercise of personal jurisdiction over non-domiciliaries in certain circumstances. Plaintiffs assert that N.Y. C.P.L.R. § 302(a)(3)(ii) applies in this case. That section provides that

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> . . .
>
>> (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>>
>> . . .
>>
>>> (ii) expects or should reasonably expect that act to have consequences in the state and derives substantial revenue from interstate or international commerce.

See N.Y. C.P.L.R. § 302(a)(3)(ii).

To establish jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii), the plaintiff must sufficiently allege that (1) defendant performed a tortious act outside of New York, (2) the cause of action arises from that tortious act, (3) the alleged tortious act caused injury within New York, (4) defendant expected or reasonably should have expected that its action would have consequences in New York and (5) defendant derives 'substantial revenue from interstate or international commerce. Ivoclar Vivadent, Inc. v. Ultident, Inc., No. 04-CV-984, 2005 WL 1421805, at *4 (W.D.N.Y. June 15, 2005) (citing N.Y. C.P.L.R. §

302(a)(3)); <u>Traver v. Officine Meccaniche Toshci SPA</u>, 233 F.Supp.2d 404, 412 (N.D.N.Y. 2002).

Plaintiffs' allegations revolve around their central contention that Defendants conducted a "program" for the production of CFP. (<u>See</u>, <u>e.g.</u>, Amended Complaint, ¶ 111 (Diaz participated in the "program" established by [Defendants]), ¶ 114 (Diaz began to participate in the "program" at Defendants' request); Plaintiffs' Memorandum of Law, p. 4 ("All of the causes of action in this case arise from the acts of defendants in selecting Diaz to participate in the Program.") However, according to the unrebutted declarations submitted by Defendants, it appears that what Plaintiffs characterize as a "program" was simply an effort by Defendants to secure a supplier of CFP. The declarations make clear that Diaz was one of three companies vying to manufacture CFP for sale to Defendants. (Bantle Decl., ¶ 7.) In this regard, Defendants were potential customers for Diaz. If Diaz could supply CFP, Defendant would purchase it. Thus, Plaintiffs' characterization of this potential customer – supplier relationship as a "program" run by Defendants overstates Defendants' involvement with Diaz.

The idea that Defendants oversaw a "program" involving Diaz is further dispelled by the fact that Defendants never visited the Diaz facility, did not manage or operate the facility, and never instructed Diaz regarding how the facility should be run. (Bantle Decl., ¶¶ 8, 11, 14, 15; O'Gara Decl., ¶¶ 12-14; Clarkson Decl., ¶¶ 8-10; Stephenson Decl., ¶¶ 7, 9.) Defendants' contacts with Diaz were limited to discussions concerning whether Diaz would be a suitable supplier of CFP, and Defendants conducted all of their discussions from outside of New York. (Bantle Decl., ¶¶ 8, 10; O'Gara Decl., ¶ 10; Stephenson Decl., ¶¶ 4, 6.)

This Court is aware that Plaintiffs allege that Defendants managed, directed, and conducted operations at the Diaz facility and had an obligation to investigate Diaz and ensure that its facility operated safely.  However, Plaintiffs have not provided any authority (and this Court could not locate any) for the proposition that Defendants had a legal duty to investigate Diaz's suitability as a potential supplier or a duty to manage Diaz's attempt to produce CFP.  Cf. Langenberg, 2006 WL 2628348, at *3 (noting that although the plaintiff does not have to prove the defendant actually committed a tort, the allegations in the Complaint must set forth a "colorable cause of action").

Moreover, Plaintiffs fail to counter the specific declarations submitted by Defendants that establish that they never in fact managed or operated the Diaz facility, never sent any of their employees to visit or work at the facility, and never dictated how Diaz should run its facility.  (Bantle Decl., ¶¶ 8, 11, 14, 15; O'Gara Decl., ¶¶ 12-14; Clarkson Decl., ¶¶ 8-10; Stephenson Decl., ¶¶ 7, 9.)  As noted in Ivoclar, "[a plaintiff's] unsupported allegations will be deemed refuted if plaintiff does not counter defendant's presentation of direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction." 2005 WL 1421805, at *2 (quotation and citation omitted).  This Court therefore finds that Plaintiffs have not made a *prima facie* showing, for jurisdictional purposes, that Defendants committed a tortious act outside of New York.

Moreover, there is a significant disconnection between Defendants' interaction with Diaz and the explosion that caused Plaintiffs' injuries.  According to the Amended Complaint, the explosion occurred because hot chemicals in a chemical process tank exploded through a rupture disk during the CFP manufacturing process.  (Amended Complaint, ¶ 125.)  An incident report prepared by Diaz and submitted by Plaintiffs in

opposition to Defendants' motion, indicates that the explosion was caused by human error or a failure in Diaz company policy. (Knauf Aff., Exhibit O.) In light of the unrebutted affidavits establishing that Defendants were wholly uninvolved in the operation of the Diaz facility or in the formulation of its policies, Plaintiffs have not made a sufficient showing that Defendants engaged in tortious conduct that caused Plaintiffs' injuries in New York.

Further, nothing in the record before this Court could reasonably be construed to support a finding that Defendants reasonably expected that their engagement of Diaz as a potential chemical supplier would subject them to tort liability in New York. Defendants sought out an existing chemical company (Diaz) to serve as a possible supplier of a certain chemical. Defendants' only intended role was to be a possible purchaser of goods from a New York business. The declarations establish that there was no legal or organizational relationship between Defendants and Diaz. And despite the discussions between them, Defendants never purchased or entered into any agreement to purchase CFP from Diaz. (Bantle Decl., ¶ 13; O'Gara Decl., ¶ 11.) In fact, Defendants eventually acquired CFP from the other suppliers located in China and the United Kingdom. (Bantle Decl., ¶ 13; O'Gara Decl., ¶ 15.) It is therefore not objectively reasonable to conclude that Defendants should have expected that their discussions with Diaz would subject them to tort liability in New York.[1]

Accordingly, this Court finds that it cannot lawfully exercise personal jurisdiction over Defendants under New York's long-arm statute.

---

[1] For the sake of completeness, this Court notes that Plaintiffs' allegations that Defendants derive substantial revenue from international commerce are sufficient to meet the final prong of the analysis. (Amended Complaint, ¶¶ 9-11.)

**B.     Due Process**

Even assuming that personal jurisdiction was permitted under New York's long-arm statute, "the Due Process Clause limits the exercise of jurisdiction to persons having certain 'minimum contacts' with the forum state." Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).  Consistent with due process, a court may exercise personal jurisdiction only over a defendant whose "'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Burger King, 471 U.S. at 474  (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980)).

Thus, to justify the exercise of personal jurisdiction, there must be a showing of "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239- 40, 2 L. Ed. 2d 1283 (1958)).  This Court finds that Plaintiff has failed to make this requisite showing.

As previously noted, Defendants had virtually no contact with New York, other than telephone, fax, and email communications related to whether Diaz would be a suitable supplier of CFP.  None of the three foreign-entity Defendants are incorporated in New York or licensed, registered or authorized to do business in New York. (Amended Complaint, ¶¶ 9-11; Bantle Decl., ¶¶ 3-4; O'Gara Decl., ¶¶ 3, 4; Clarkson Decl., ¶¶ 3, 4.)  None of them have offices, agents or bank accounts in New York, nor do they have officers or

employees located in New York. (Bantle Decl., ¶ 5; O'Gara Decl., ¶ 5; Clarkson Decl., ¶ 5.)

Defendants did not own, operate, manage, or run Diaz, nor did they instruct Diaz on issues relating to environmental regulations and safety procedures. (Bantle Decl., ¶¶ 14, 15; O'Gara Decl., ¶¶ 13, 14; Clarkson Decl., ¶¶ 8, 9.) None of Defendants' employees ever visited or worked at the Diaz facility, and Defendants never purchased or agreed to purchase CFP from Diaz. (Bantle Decl., ¶¶ 8, 11, 13; O'Gara Decl., ¶¶ 11, 12; Clarkson Decl., ¶ 7.) Finally, Defendants do not manufacture, market, promote, sell or distribute any chemicals in New York. (Bantle Decl., ¶ 6; O'Gara Decl., ¶¶ 6, 7; Clarkson Decl., ¶¶ 6, 7.)

In the absence of even minimal contacts, such as here, this Court cannot exercise jurisdiction without violating Due Process. See Langenberg, 2006 WL 2628348, at *6 (finding that the exercise of jurisdiction over a defendant with no contacts with the forum state violates the minimum contacts requirement of due process).

Moreover, Defendants' contacts with New York, which were limited to telephone, fax and email discussions, are simply not of the type that Defendants could reasonably be expected to anticipate being haled into court here. Burger King, 471 U.S. at 474. This is particularly so because Plaintiffs' causes of action do not stem from these contacts. Plaintiffs principally allege that Defendants failed in their alleged duty to investigate Diaz and ensure the safety of the facility. These allegations do not arise out of Defendants contacts with New York, which were limited to providing Diaz with the technical specifications for CFP and determining whether Diaz could supply the chemical. Thus, Plaintiffs have failed to identify acts taken by Defendants from which it could reasonably be concluded that they purposely availed themselves of the privilege of conducting

activities in New York, thereby invoking the benefits and protections of its laws. See id. at 475.

Finally, this Court finds that under these circumstances, with Defendants hailing from England, Ireland and Switzerland, it would not be reasonable to exercise jurisdiction and compel them to defend tort allegations in New York. See Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (noting that "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders").

**C.     Plaintiffs' Discovery Request**

Along with opposing Defendants' motion outright, Plaintiffs alternatively argue that they should be permitted additional time to engage in discovery on the jurisdictional issue. However, "[j]urisdictional discovery is appropriate where the plaintiff made a sufficient start toward establishing jurisdiction and where it would not be a 'fishing expedition' when little more exists than plaintiff's bare assertions that jurisdiction is proper." Ivoclar Vivadent, 2005 WL 1421805, at *5 (citing Manhattan Life Ins. Co. v. A.J. Stratton Syndicate, 731 F.Supp. 587, 593 (S.D.N.Y. 1990)); Langenberg, 2006 WL 2628348, at *6 ("where the plaintiff has failed to make out a *prima facie* case, courts have displayed an unwillingness to grant additional discovery on jurisdictional issues").

In this Court's view, Plaintiffs have made little, if any, progress in establishing jurisdiction. The declarations submitted by Defendants are unequivocal and deny any jurisdictionally meaningful contact with New York. Plaintiffs have submitted nothing in rebuttal, despite the benefit of having received some discovery in the two other cases

brought against Diaz entities. Plaintiffs' request for jurisdictional discovery is therefore denied. See Ivoclar Vivadent, 2005 WL 1421805, at *5 (denying request for jurisdictional discovery where the defendant submitted an affidavit that categorically denied that defendant had transacted business or had any other contacts with New York and answered all questions regarding jurisdiction); Wafios Mach. Corp. v. Nucoil Indus. Co., No. 03 Civ. 9865, 2004 WL 1627168, at *5-*6 (S.D.N.Y. July 23, 2004) (denying request for jurisdictional discovery related to a foreign defendant who provided an affidavit categorically denying contacts with New York).

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Plaintiffs' Amended Complaint must be dismissed for lack of personal jurisdiction. In light of this finding, this Court need not resolve Defendants' alternative arguments for dismissal. See Gradinger v. Pioneer Life Ins. Co. No. 04 CV 1191, 2004 WL 1656576, at *4 n.5 (S.D.N.Y. July 22, 2004).

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 45) is GRANTED on jurisdictional grounds.

FURTHER, that Plaintiffs' alternative request for additional discovery is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   November 27 , 2006
         Buffalo, New York

                                                    /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge